DENZER et al. v. GREWEN et al.

(Supreme Court, Appellate Division, First Department.   July 13, 1909.)

VENUE (§ 52*)—CHANGE OF VENUE—CONVENIENCE OF WITNESSES.

Plaintiffs, wholesale merchants in New York, sent their agent to defendants' place of business in Fulton county to solicit orders. The orders were negotiated there unconditionally, and on being received were confirmed by plaintiffs by letter written in New York. The contract was silent as to the place of delivery; but it was assumed that delivery was to be made at defendants' place of business. *Held*, that the contract was made in Fulton county, and that defendants, in an action for breach thereof, were entitled to have the venue changed to that county for convenience of witnesses, etc.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 76; Dec. Dig. § 52.*]

Appeal from Special Term, New York County.

Action by Theodore R. Denzer and another against John A. Grewen and another. From a Special Term order denying defendants' motion for a change of the place of trial from New York to Fulton county, they appeal. Reversed, and motion granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Fred. Linus Carroll, for appellants.

Joseph M. Proskauer (Abram I. Elkus, on the brief), for respondents.

LAUGHLIN, J. The complaint sets forth two causes of action in separate counts. The first is to recover the sum of $1,729.01, with interest, for a breach of a contract made between the parties on the 22d day of August, 1907, whereby the plaintiffs agreed to sell and deliver to the defendants, for the consideration therein expressed, four cases of Peach Bloom Black Taffeta goods, and defendants agreed to purchase the same, which it is alleged the defendants violated, in that, before the goods were shipped, they gave notice to the plaintiffs that they would not accept the goods, and refused a tender of delivery thereof and gave notice that they canceled the contract; and it is further alleged that thereafter, and on or about the 16th day of December, 1907, the defendants again promised to accept and pay for the goods and to supply plaintiffs with a cut for a particular label to be used on the goods, which the defendants failed to do, and thereafter refused a tender of delivery of the goods duly made by the plaintiffs, whereupon the plaintiffs stored the goods for the account of the defendants and gave them due notice thereof, and have since held the goods subject to the order of the defendants.

The second count is for damages for a breach of a contract made on the 28th day of May, 1907, by which the defendants agreed to accept and pay for 10 cases of Frou Frou Taffeta, one case to be delivered every 10 days, commencing with October 10th that year, under which, it is alleged, plaintiffs delivered one case of goods and thereafter exchanged it for another shipped on the 19th day of October, 1907, which defendants received and accepted but failed to pay for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and requested plaintiffs on said last-mentioned day not to ship any more goods until further notice, which has never been given, notwithstanding the fact that plaintiffs repeatedly requested shipping instructions from the defendants for the balance of the goods, and on or about the 22d day of October, 1907, plaintiffs duly tendered the delivery of the entire balance of the goods, which tender was met with a notice by the defendants canceling the contract, whereupon plaintiffs stored and held the goods in the manner the other goods were stored, as herein stated.

It appears without dispute that the plaintiffs were and are copartners as wholesale dealers in dry goods in the borough of Manhattan, N. Y. The defendants allege in their answer: That, prior to the time of making the contract mentioned in the first count of the complaint, they purchased of the plaintiffs a quantity of Peach Bloom Taffeta from samples exhibited to them by the plaintiffs, which represented sound and merchantable goods, suitable for the manufacture of skirts, and which the plaintiffs agreed should be equal to said samples; that the goods shipped by the plaintiffs were greatly inferior in quality to the sample; that the contract upon which the first cause of action is based was negotiated with the defendants at their place of business in Johnstown, N. Y., by a traveling sales agent of the plaintiffs; that the contract to purchase four additional cases of Peach Bloom Black Taffeta was conditioned upon the plaintiffs replacing goods sent on the prior order, which the defendants claimed were not equal to the sample by which they were purchased, with goods equal to the sample; that thereafter the plaintiffs shipped goods in attempted fulfillment of said agreement with respect to the prior order, which were not equal to the sample, but were inferior thereto in color, shade, and finish—whereupon the defendants canceled the order.

With respect to the second count of the complaint, the answer of the defendants is to the effect: That the goods were sold to them at Johnstown by a traveling salesman in the employ of the plaintiffs, by sample, and on the express agreement that the goods to be shipped would be equal to the sample in every respect; that the first case shipped was found, on examination after its receipt by the defendants, to be inferior to the samples and not in accordance with the agreement, and the defendants thereupon reshipped the same to the plaintiffs; that the second and third cases of goods shipped by the defendants pursuant to the contract set up in the second count of the complaint were received and accepted by the defendants in reliance upon the prior agreement that they should be equal to the sample, which agreement the defendants claim was a warranty, and the defendants, relying upon the alleged warranty, used part of the third case so shipped; but that thereafter these goods were found not to be in accordance with the sample, and to be of an inferior quality and unfit for use in the defendants' business, for the reason that they were coarser in quality and of rotten or unsound and imperfect fabric or materials and were wholly unfit for use in the manufacture of skirts and of no value therefor; that the defendants have paid for the amount of these goods used and returned the balance, which the plaintiffs received and accepted; and that, upon discovering that the goods were not in ac-

cordance with the samples, the defendants duly notified the plaintiffs of that fact, and on account thereof canceled the contract and gave notice that they would not receive any further shipments from the plaintiffs. The defendants also pleaded a counterclaim for damages caused by the plaintiffs' breach of the contract sued upon in the second count of the complaint.

This is not a case where the contract for the sale of the goods was negotiated in the county of the residence of the vendor. The plaintiffs sent their agent to the defendants' place of business to solicit these orders, and the orders were negotiated there unconditionally. The mere fact that the plaintiffs, on receiving the order from their salesman, wrote the defendants confirming the order, does not show that the contract was made in New York. The contract is silent with respect to the place of delivery; but the defendants were manufacturing skirts at Johnstown, N. Y., and that was therefore the place of delivery. The principal controversy arises over the terms of the contracts and the quality of goods received by the defendants under these contracts or under the prior contract. In view of these facts, the moving papers sufficiently show that the convenience of witnesses and the ends of justice will be subserved by changing the place of trial to the county of Fulton.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.